## A GOOD VERDICT VITIATED BY FALSE TESIIMONY.

Superior Court of Cincinnati.

## THE CINCINNATI TRACTION CO., ETC., V. JOSEPH SCHLASINGER.

Decided, October 22, 1925.

*Action to Set Aside Verdict after Term—Shown to have been obtained by False Testimony—Fraudulent Representations as to Injuries Received—Section 11631, Providing for Vacation of Judgments.*

Where a judgment for injuries is obtained through wilfully false testimony by the plaintiff and his friends as to the cause of his injuries, it is within the power of the court to set the judgment aside after term for "fraud practiced by the successful party in obtaining the judgment."

*Leo J. Brumleve, Jr.,* for plaintiff.

*Chester R. Shook* and *Otto Spangenberg,* for defendant.

MARX, J.

This action is brought to set aside the verdict and judgment in the amount of eighty-one hundred ($8,100) dollars heretofore rendered in favor of Joseph Schlasinger against the Cincinnati Traction Company and for a new trial.

The action is based upon the ground that the plaintiff and his witnesses conspired to obtain said verdict and judgment by false evidence and fraud. The cause of action is set forth in the petition of the Cincinnati Traction Company which is deemed denied under Section 11581, G. C. The case was heard by the court upon the petition and the evidence within twenty (20) days after the completion of service of summons in conformity with the provisions of the above statute, which as to time of hearing and decision are merely directory and not mandatory. The evidence clearly establishes a successful attempt upon the part of the plaintiff and certain of his witnesses to deceive the court and jury as to material facts and to secure a verdict upon false and perjured evidence.

The plaintiff not only deceived the court and jury but his own counsel as to the true facts. Under these circumstances his lawyers were and are entirely free from blame and nothing in this opinion is intended to reflect in any way upon the excellent professional standing and character of the lawyers who appeared for him and who were equally as much misled by his deception as opposing counsel or the court and jury.

The plaintiff claimed at the trial of his case that he was driving a wagon which was struck by a street car, and that he was thrown backwards over the seat and thereby sustained permanent injuries to his back. He appeared in the court room to be suffering considerable pain. He walked with difficulty and stooped over apparently unable to stand erect. He was hardly able to sit down or to rise from a sitting position without assistance. He said under oath that prior to the street car accident he was a strong healthy man; worked every day, walked erect and that he never had any injury or ailment of any kind except an operation for appendicitis from which he had completely recovered. On the basis that prior to the street car accident he was a strong healthy man who had never had anything the matter with his back and who walked erect and that since the street car accident he had become a cripple, unable to work or walk without pain, and in a stooped condition, the jury awarded him eighty-one hundred dollars. The court was so moved by sympathy for the unfortunate condition of the plaintiff, apparently due entirely to the street car accident, that judgment was entered upon the verdict somewhat reluctantly and with the feeling that the amount was insufficient. It now develops by the admission of the plaintiff upon the witness stand, and the admission of his wife and family, that the picture and story presented by the plaintiff at the trial was fraudulent and false. The plaintiff now admits that some fifteen years ago while loading a three hundred pound cake of ice in a railroad car, the

ice-tongs slipped and he fell from the floor of the railroad car sideways on to the granite street below and struck his side and but. Ever since this accident, he complained of pain in his back and wore various devices designed to relieve such pain. The pain from this injury was so severe that he frequently was unable to work and consulted numerous doctors. For part of the time he walked with a cane and always in a more or less stooped position. The plaintiff also admits that he had another accident while loading some heavy ties on a wagon, some years before the street car accident, which further aggravated the painful condition of his back. Up to within a year of the street car accident, he was treated by doctors and chiropractors for pains in his back.

All of this information was concealed from the court and jury at the trial. The extent of the fraud practiced by the plaintiff is most apparent by reading his own evidence under oath upon the trial of his case. Under examination by his own counsel, he was asked, page 131:

Q. Mr. Schlasinger, before September 15, 1923, what was your condition of health?

A. I was always well.

At page 132:

Q. Who operated on you?

A. Dr. Littel and Dr. Kramer.

Q. Outside of those two doctors, have you had any other physicians?

A. No sir.

Q. Before that time?

A. No sir.

Q. Outside of the operation which was performed on you, the operation for appendicitis in the last 20 years, have you ever been ill or sick, or had any ailments of any kind?

A. Twenty years, no sir, not in twenty years.

Q. You have always worked in that time or not?

A. I always worked.

Q.   Every day?

A.   Every day.

At page 152:

Q.   Now, let me ask you this.   Prior to this injury on the· 15th of September, 1923, what was your position as to standing up; how would you stand up, would you be erect or bent over?

A.   *Yes sir.   I always was straight.*

At page 153:

Q.   *Did you at any time in your life have a fall of any kind, or injury to your back of any kind?*

A.   *No sir.*

Q.   *Of any kind, at any time?*

A.   *No sir.*

His daughter testified to the same effect, pages 90· and 91.   So did other witnesses, Jack Segbers, pages 86 to 89; George Weber and John Treft, etc.

Each and all of the above answers were knowingly untrue.   It is possible that the street car accident may have aggravated the injuries to the back of the plaintiff which he received in two previous falls, but that was not the claim that he made under oath and for the purpose of getting large sums of money from defendant.   The claim that he made under oath was that his back was never injured before, that he had always walked erect and straight and that all of the conditions of which he complained, and the pitiful plight in which the jury saw him had come about as a result of and since the street car accident.

The sympathy of the court is invoked because of the condition of the plaintiff and because of his alleged ignorance, but this corruption of justice is too serious to pass unnoticed or unpunished.

Perjury in personal injury cases must be stopped.   It occurs with alarming frequency.   Many otherwise honest individuals do not hesitate to exaggerate the nature and effect of injuries, or to falsely state facts or give biased

professional opinions, for the purpose of obtaining a large verdict from the defendant in personal injury cases. In the opinion of this court, it is just as great a crime to forge evidence for the purpose of getting money from a defendant in a personal injury case, as it to forge a check in order to get money from a bank in some dishonest financial transaction. In fact, forging evidence is more serious than forging a check because it corrupts justice and casts suspicion upon honest claimants. Thus the innocent are made to suffer unjustly by the perjury of dishonest claimants.

For these reasons the relief prayed for will be granted and the judgment heretofore rendered will be set aside and vacated. Under the law a new trial must be granted. Hence the mere setting aside of an eighty-one hundred dollar judgment is inadequate punishment for the offense committed. Those who obtain money by false pretenses or by forgery are punished with certainty and severity. The plaintiff in this case sued for $26,000. He sought to take this money from the defendant by deliberately false pretenses. His attempt almost succeeded and it was by chance that the truth was discovered after the judgment had been entered. Had the true facts been known at the time of the trial, the result would have been entirely different.

Under these circumstances, there is a duty to refer this matter to the prosecuting attorney for this county with the request that he investigate further into the motives and intent of the plaintiff and his witnesses and if found advisable, to present the matter to the grand jury for their action.

The court has considered the technical objections to the setting aside of the verdict and finds the same without merit. In our opinion, the action is brought within the time provided by Section 11581 and is also covered by Section 11631, paragraph 4, General Code.

Aside from statute, where a judgment is obtained by

fraud it may be set aside by a court of equity. This decision is fully supported by the similar case of *Emma McCathran* v. *Columbus Transfer Co.,* — C. C. (N. S.), 569, and *Baldwin* v. *Sheets,* 39 O. S., 624.

There is no doubt that the defendant made every effort to discover the facts and was completely deceived by the deposition of the plaintiff taken in advance of the trial— in which he said he had never sustained any other injury in his life—and proceeded with due diligence to investigate the newly discovered facts as soon as brought to its attention.

A decree will therefore be entered in accordance with this opinion.